IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

JAMES H. WEBER,

                Plaintiff,

v.

ANDREW M. SAUL, Commissioner of
Social Security,

                Defendant.

OPINION AND ORDER

19-cv-448-wmc

    Pursuant to 42 U.S.C. § 405(g), plaintiff James H. Weber seeks judicial review of a final determination that he was not disabled within the meaning of the Social Security Act. Weber contends that remand is warranted because the administrative law judge ("ALJ") failed to account for: (1) work limitations caused by Weber's colitis in the hypothetical questions posed to the vocational expert; (2) the extent of plaintiff's limitations in concentration, persistence and pace ("CPP") and interacting with others in formulating his residual functional capacity ("RFC"); and (3) the opinion of Nurse Practitioner Julie Hintzman. For the reasons that follow, the court will remand for further proceedings.

BACKGROUND[1]

**A. Overview**

    Plaintiff James H. Weber has at least a high school education, is able to communicate in English, and has past work experience as a small products assembler and a light truck driver. Weber last engaged in substantial gainful activity in June 2015, which

---

[1] The following facts are drawn from the administrative record ("AR"), which can be found at dkt. #9.

coincides with his amended, alleged disability onset date, although he continued to work for short periods of time in 2016 and 2017.

Weber applied for supplemental security income on June 4, 2015, originally claiming an alleged onset date of April 1, 2014. With a birth date of November 23, 1970, Weber was 44 years-old at the time he filed his application, making him a "younger individual" under 20 C.F.R. § 416.963. Weber claimed disability based on ulcerative colitis, epilepsy, depression and anxiety. (AR 69.)

### B. ALJ Decision

ALJ Amy L. Rosenberg held an evidentiary hearing via videoconference on July 13, 2018, at which plaintiff appeared personally and by the same counsel representing him on appeal now. As of the alleged onset date of June 1, 2015, the ALJ found that Weber had the following severe impairments: depressive, anxiety, personality and post-traumatic stress disorders; alcohol and cannabis dependence in remission; seizure disorder; and ulcerative colitis. (AR 15.) Next, the ALJ considered whether any of plaintiff's impairments or combination of impairments met or medically equaled any of the listings.

Material to this appeal, the ALJ specifically considered whether plaintiff's mental impairments met the relevant listings. Under the "paragraph B" criteria, the ALJ found that Weber had: moderate limitations in understanding, remembering or applying information; marked limitations in interacting with others; moderate limitations in CPP; and moderate limitations in adapting or managing oneself. (AR 16.) With regard to the CPP limitation in particular, the ALJ explained:

> The claimant reported that he could pay attention for less than a half hour at a time; he does not handle stress well; and he requires breaks in order to complete tasks once he starts them (Ex. 7E/6-7). That said, the claimant indicated that he regularly watches television and he completes tasks once he starts them (Ex. 7E/5-6). In particular, the claimant reported to Dr. Bienck that he was able to follow the plot of a movie; he did not have any difficulty paying his bills; and he was able to focus on things that he enjoyed (Ex. 9F/2). Moreover, [] the results of testing reflected good processing speed, attention, and visual-spatial skills. (Ex. 9F/10-11).

(AR 16.)

In crafting Weber's residual functional capacity ("RFC"), the ALJ found that Weber could perform "a full range of work at all exertional levels" but with some non-exertional, physical limitations. (AR 17.) To address his mental limitations, the ALJ also found that Weber could:

> understand, remember, and carry out simple, routine tasks and he can make simple work-related decisions. After an initial training period, which might require frequent or constant contact with supervisors or coworkers, he should have no more than occasional direct interaction with supervisors, coworkers, and the public.

(*Id.*) Moreover, to address his ulcerative colitis, the RFC found that Weber:

> needs the flexibility to leave his workstation at will, with just a few minutes' notice, to use the restroom outside of regularly scheduled breaks, two to three times per day, for up to 10 minutes at a time.

(*Id.*)

In crafting the part of the RFC addressing his mental limitations, the ALJ listed Weber's various, mental illness diagnoses, including personality disorder, depressive disorder, anxiety disorder and posttraumatic stress disorder. (AR 19.) The ALJ also described Weber's reported symptoms, as well as the fact that two different physicians

3

terminated treatment after he threatened them for refusing to prescribe specific medication. (AR 19.) Ultimately, the ALJ concluded that Weber "does not experience the degree of mental limitation that he alleged in reports and at [the] hearing," offering following reasons: (1) treatment notes reflecting some improvement in symptoms; (2) failure to take psychotropic medications or comply with the prescribed treatment; (3) testing in March 2016 by Dr. Bienck[2] that "did not indicate significant deficits in memory or other cognitive skills" (i.e., "no impairments in the areas of learning, processing speed, attention, and visual-spatial skill"); (4) improvement after hospitalization for suicide ideation in July 2016 once placed on psychotropic medications; (5) evidence in the record indicating that Weber lost prior jobs because he overslept or was sick and missed too much work, rather than his claim that he was "flying off at the mouth"; and (6) Weber's described daily activities "are not limited to the extent one would expect, given [his] complaints of disabling symptoms and limitations." (AR 19-21.)

The ALJ also considered the opinion testimony concerning plaintiff's mental limitations, placing moderate weight on the opinion of Dr. Bienck, who treated Weber from February 22 to March 29, 2016, accepting Bienck's assessment of Weber's limitations, but finding that the totality of the evidence supports additional limitations not addressed in her opinion. (AR 22.) The ALJ also considered the opinions of the state agency psychological consultants -- Roger Rattan, Ph.D., and Stephen Kleinman, M.D. -- assigning some weight to each, while noting that "Dr. Rattan's opinion, in particular, is

---

[2] It appears that the psychiatrist's name may be Bien*e*k. (*See* AR 589.)

vague and generally fails to assess the claimant's work-related abilities on a function-by-function basis." (AR 23.) In particular, based upon the assessed limitations -- including moderate limitations in CPP -- the ALJ noted Dr. Kleinman's statement that "the claimant could manage all components necessary for simple tasks." (*Id.*)

Also material to one of plaintiff's challenges on appeal, the ALJ included a lengthy discussion of the October 2016 opinion of Julie Hintzman, A.P.S.W., a treating provider, while placing only little weight on her opinion. The ALJ first described in great detail Hintzman's opinions about Weber's work limitations, including: various, off-task assessments attributed to an assortment of his limitations; his ability to sit, stand and walk; and her ultimate conclusion that Weber "could not obtain and retain work in a competitive work setting - 8 hours per day, 5 days per week - for a continuous period of at least six months." (AR 22-23.) The ALJ then described her varied reasons for discounting these opinions: (1) they are at odds with "the totality of the objective medical records, including the claimant's reported improvement with prescribed treatment, the results of the examination conducted by Dr. Bienck, and the claimant's recitation of his activities of daily living"; (2) Hintzman's own note in Weber's medical record acknowledging that her treatment of Weber was "random," which raises questions as to whether she "[w]as able to personally observe the claimant"; (3) her assessment of Weber's physical limitations falls outside of Hintzman's area of expertise; and (4) the ultimate determination of whether a claimant is disabled is reserved for the Commissioner. (AR 23.)

Finally, relying on the testimony of the VE, the ALJ determined that while Weber could not perform his past relevant work experience as a small products assembler and light

truck driver, that he *could* perform other jobs that exist in significant numbers in the national economy, including housekeeping, material handler, and cleaner. As such, the ALJ concluded that Weber was not disabled.

### C. Medical Record

In his brief, plaintiff Weber emphasizes the following from his own medical records. On April 5, 2014, he saw Dr. Daniels, who noted that he had a seizure, which Weber explained was his fourth such seizure. (AR 970.) On May 21, 2014, Dr. Siapush described Weber's mental health impairments, including "a history of ADHD and anxiety, more than 4 suicide attempts and 3 psych admissions." (AR 425.) Weber also described panic attacks and agoraphobia. (*Id.*)

In April 1, 2015, plaintiff saw Dr. Leahy for complaints about "social anxiety" and described having panic attacks, including while at work. (AR 443.) On May 5, 2015, Weber saw Dr. Rave for headaches suffered over the last several weeks, which he reported were in the past severe enough to require him to go to the emergency room with migraines. (AR 465.) At that time, Dr. Rave also noted Weber complained of behavioral changes, including "an episode where he woke up" and just "'snapped' and he knocked a chair over and threw some clippers and just took off out of the house." (*Id.*)

On March 22, 2016, Weber saw Dr. Manzon for "increasing symptoms of anxiety," and "some form of social phobia." (AR 611.) Dr. Manzon noted that Weber may have "an antisocial personality rather than anxiety disorder" and "appeared to have PTSD from a previous accident." (*Id.*)

On July 6, 2017, Weber also saw Sonja Rose Scholz, N.P., for persistent headaches, which he rated a 6 to a 10 out of 10 in terms of pain and for which he was prescribed Reglan, which helps temporarily, after being seen in the emergency room. (AR 593.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well-settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence," *id.*, and insure the ALJ has provided "a logical bridge" between findings of fact and conclusions of law, *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018).

As set forth above, Weber raises three, basic challenges on appeal. Accordingly, the court will address each in turn under this standard of review.

I. **Failure to Propound a Limitation for Bathroom Breaks**

Plaintiff's first challenge warrants little discussion. Weber contends that the ALJ erred by failing to propound a bathroom break limitation to address Weber's ulcerative colitis as part of the hypotheticals provided to the VE. More specifically, as noted above, the ALJ expressly adopted Dr. Kim's opinion that Weber would need 2 to 3 unscheduled, 10 minutes breaks per day away from his workstation with as little as 5 minutes notice. (AR 21, 572.) Indeed, as quoted above, the ALJ included that very limitation in the RFC she created. However, plaintiff contends that the ALJ "never propounded this limitation to the vocational expert to determine the impact on the occupational base," and further argues that this constitutes error because "frequent unscheduled breaks erode the occupational base resulting in a finding that work in sufficient numbers would not exist in the national economy." (Pl.'s Opening Br. (dkt. #13) 12.)

The glaring problem with plaintiff's argument is that, as the Commissioner pointed out in his response, the ALJ *did* include this same limitation in the questions propounded to the VE. The ALJ initially asked the VE to consider an individual with plaintiff's age, education and work experience who could perform work including all of the RFC limitations, except for the unscheduled bathroom breaks. (AR 59.) Then, the ALJ asked the VE to consider an additional limitation:

> If this person needed the flexibility to leave his workstation at will with just a few minutes notice to use the restroom outside of regularly scheduled breaks, I assume for the purposes of this hypothetical that this might happen two to three times during the day up to 10 minutes at a . . . time would that affect the ability to do . . . other work like the work you gave?

8

(AR 60.) The VE responded that the individual could still perform the housekeeper and material handler jobs she had previously provided, and when pressed for another job, she responded that the individual could also perform the cleaner job. (AR 61.) The court, therefore, rejects this basis for remand.

## II. Mental Health Limitations

The bulk of plaintiff's brief concerns his challenge to the ALJ's treatment of his mental health limitations. *First*, plaintiff contends that the ALJ failed to account for Weber's moderate limitations in CPP in the RFC and in the hypotheticals posed to the VE. Relying on well-established case law in the Seventh Circuit, Weber points out that a limitation to "simple, routine tasks" is insufficient to account for his CPP limitations and would render both an RFC formulation and opinions by a vocational expert deficient. *See, e.g.*, *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 617 (7th Cir. 2010) (ALJ should refer "expressly to limitations on concentration, persistence, and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do"); *Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("When it comes to the RFC finding, we have likewise underscored that the ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace." (citation and quotation marks omitted)).

As an initial matter, the RFC here did not just limit Weber to "simple, routine tasks"; instead, the ALJ's RFC provided that Weber could only "make simple work-related decisions" and was limited to "no more than occasional direct interaction with supervisors,

coworkers, and the public" after an initial training period. (AR 17.) While the latter limitation likely addresses plaintiff's moderate limitations in interacting with others, *see Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015), defendant offers no support for the argument that limiting him to simple, work-related decisions is any better than simple, routine tasks given the extent and type of Weber's recognized limitations in CPP.

In fairness, the Seventh Circuit has defined two exceptions to the general rule that the ALJ "may not rely merely on catch-all terms like 'simple, repetitive tasks.'" *Crump*, 932 F.3d at 570. The first exception is that "an ALJ may reasonably rely upon the opinion of a medical expert who translates [CPP] findings into an RFC determination." *Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019); *see also Milliken v. Astrue*, 397 F. App'x 218, 221 (7th Cir. 2010) (holding that an ALJ may rely on the opinion of "a medical expert who effectively translated an opinion regarding the claimant's mental limitations into an RFC assessment"); *Rankila v. Saul*, No. 18-CV-406-WMC, 2019 WL 4942110, at *3 (W.D. Wis. Oct. 8, 2019) (providing overview of Seventh Circuit cases describing this exception).

The Commissioner argues here that the ALJ did just that by relying "on the expert opinions of two state agency psychologists that Plaintiff was capable of performing such work." (Def.'s Opp'n (dkt. #14) 19 (citing AR 23, 78-80, 92-94).) In a report dated October 1, 2015, Dr. Rattan indicated that Weber had moderate limitations in the following CPP sub-categories: ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;

ability to work in coordination with or in proximity to others without being distracted by them; and the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a constant pace within an unreasonable number and length of rest periods. (AR 79.) Based on these findings, Dr. Rattan provided the following narrative on Weber's CPP limitations:

> Cl[aimant] has documented diagnoses of anxiety, depression, ADHD/ADD, and personality [disorder]. The [symptoms] related to these [diagnoses] would interfere with [claimants] ability to maintain CPP for extended periods. There are clinic notes and ADL information indicating [claimant] has trouble maintaining long-term schedules, being punctual, etc. However, [claimant] has also demonstrated an ability to maintain employment for several months at a time successfully, and his [mental status examinations] in 2014 and 2015 appear stable and improving, in spite of some limits with regard to judgment/insight. [Claimant] reports medication helps.

(*Id.*) Notably, Dr. Rattan did *not* translate plaintiff's CPP limitation into an ability to perform simple, routine tasks. Instead, in assessing his moderate limitation in understanding, remembering or applying information, Dr. Rattan concluded that plaintiff "retains the ability to remember simple instructions." (AR 78.)

As for Dr. Kleinman, in his April 2, 2016, report, he copied and pasted the same information provided in Dr. Rattan's earlier report, but stated at the end of the report that Weber "[c]an manage all components necessary for simple tasks." (AR 94.) Moreover, as set forth above the ALJ expressly relied upon this portion of Kleinman's report in her decision. (AR 23 ("On reconsideration, Dr. Kleinman adopted the opinion of Dr. Rattan, but specified that based upon the above statements, the claimant could manage all components necessary for simple tasks.").)

11

Still, plaintiff argues that the ALJ may not rely on a general statement as to Weber's ability at the end of Kleinman's report because it is not consistent with the specific findings in the first part of his report. (Pl.'s Opening Br. (dkt. #13) 22-23 (citing *Capman v. Colvin*, 617 F. App'x 575, 578-59 (7th Cir. 2015) ("[T]he ALJ may reasonably rely on the examiner's narrative in Section III, at least where it is not inconsistent with the findings in the Section I worksheet."); *Varga*, 794 F.3d at 816 ("[I]n some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulated and translates those worksheet observations.")).) Specifically, plaintiff argues that limiting Weber to "simple, routine tasks," even coupled with the limiting him to "simple work-related decisions," does not address Drs. Rattan and Kleinman's findings that plaintiff was moderately limited with respect to performing activities within a schedule, maintaining regular attendance and being punctual, among other sub-categories.

In response, other than attempting to discount the meaning of "moderate" by citing to agency rules, which *post-date* the two reports by the state agency psychologists here (Def.'s Opp'n (dkt. #14) 7), the Commissioner argues that "the ALJ was entitled to rely on the psychologists' bottom-line conclusions that Plaintiff was capable of performing unskilled work." (*Id.* at 14 (citing 20 C.F.R. § 416.913a(b)(1); *Flener v. Barnhart*, 361 F/3d 442, 447-48 (7th Cir. 2004) ("It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation."); *Capman*, 617 F. App'x at 579).) However, the Commissioner fails to explain how Dr. Kleinman's notation at the end of the report that Weber is capable of performing simple tasks is consistent with, or otherwise addresses, both his and Dr. Rattan's views that

12

plaintiff has moderate limitations in performing activities within a schedule, maintaining regular attendance or being punctual. Therefore, the court agrees with plaintiff that the ALJ's formulation of Weber's RFC is not saved by Dr. Kleinman's cursory statement that plaintiff could perform "simple tasks" to the extent inconsistent with his express findings earlier in the report regarding Weber's persistence issues, at least without adequately addressing those glaring inconsistencies.

Unfortunately for the Commissioner, this deficiency is only underscored by the Seventh Circuit's second exception to the general CPP rule articulated above: the court will affirm "RFC determinations . . . when they adequately account for the claimant's demonstrated psychological symptoms." *Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) (citing *Johansen v. Barnhart*, 314 F.3d 283, 288–89 (7th Cir. 2002)); *see also O'Connor-Spinner*, 627 F.3d at 619 (providing examples of this exception). In other words, while the generic limitation to "simple, routine tasks" may not be relied on to address all CPP limitations, there are cases where such a limitation may be appropriate *if* adequately explained. Here, for the same reasons as the court rejects application of the first exception, neither the ALJ nor the Commissioner in his opposition brief adequately explains *why* the limitations to simple, routine tasks and making only simple, work-related decisions address his moderate limitations in CPP, particularly Weber's acknowledged challenges with persistence. As such, the court find this error warrants remand.[3]

---

[3] Related to this challenge, plaintiff also faults the ALJ for failing to address adequately each state agency psychologists' findings of moderate limitations with respect to other sub-categories of Weber's CPP limitation. This argument is largely duplicative of the first challenge, but the court accepts it for the same reasons.

*Second*, plaintiff challenges the ALJ's finding that Weber would be able to tolerate frequent or even constant contact with supervisors and coworkers during an initial training period. Specifically, Weber questions "why would the claimant have no problems with interacting during the training period." (Pl.'s Opening Br. (dkt. #13) 26.) In response to this challenge, the Commissioner cites to portions of the record suggesting Weber might suffer from "moderate," as opposed to "marked," limitations in the "interacting with other" paragraph B criteria. This argument, however, misses the point of plaintiff's challenge. Whether there is some evidence to support a moderate limitation finding or not, the ALJ here *found that Weber had marked* limitations in interacting with others. To accommodate that mental limitation, the ALJ further limited plaintiff to "no more than occasional direct interaction with supervisors, coworkers, and the public," but inexplicably carved out an initial training period, during which she found Weber *could* tolerate "frequent or constant contact with supervisors or coworkers." (AR 17.)

Having failed to provide any explanation as to why she believed Weber could tolerate frequent or constant contact with others during a training period, the court can only guess that the ALJ relied on plaintiff's statements in his function report that: he "shops in stores a couple of times per week, albeit as briefly as possible; he has a roommate; and he has several friends who he stays in touch with by telephone." (AR 21.) Or, as the Commissioner offers, perhaps the ALJ was thinking of evidence that Weber had somehow managed to "maintain employment for several months at a time after his alleged onset date." (Def.'s Opp'n (dkt. #14) 27.) Regardless, the court agrees with plaintiff that the ALJ failed "to develop a logical bridge" between the record evidence and her determination

14

that plaintiff could handle frequent or constant contact with supervisors and others during a training period. As such, the court accepts this basis for remand as well.

### III. Treatment of Hintzman's Opinion

Finally, plaintiff challenges the ALJ's treatment of plaintiff's social worker Julie Hintzman. As detailed in the ALJ's decision, Hintzman provides an array of opinions about the percentage of time Weber would be off-task due to his mental health issues, while she also provides limitations based on physical impairments. (AR 22.) At minimum, Hintzman's report itself is not a model of clarity. Moreover, the ALJ provides a number of sound bases for limiting the report's weight, including that: it is inconsistent with the opinions offered by plaintiff's treating psychiatrist; Hintzman herself noted that Weber's attendance was "random," thus calling into question her ability to opine on these issues; and other reasons. Thus, the court rejects this challenge. Of course, on remand, the ALJ may consider Hintzman's report anew, along with any other evidence with respect to Weber's CPP limitation.

ORDER

IT IS ORDERED that the decision of defendant Andrew M. Saul, Commissioner of Social Security, denying plaintiff James H. Weber's application for disability and disability insurance benefits and supplemental security income is REVERSED AND REMANDED under sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with the opinion set forth above.

Entered this 12th day of January, 2021.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge